Argued and submitted March 17,
reversed and remanded April 21, 1980

## JACK DOWNER,
*Petitioner,*

*v.*

## OREGON STATE PENITENTIARY,
*Respondent.*

(No. 10-79-297, CA 16121)

609 P2d 916

David E. Groom, Deputy Public Defender, Salem, argued the cause for petitioner. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Scott McAlister, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Schwab, Chief Judge, and Joseph, Warden and Warren, Judges.

JOSEPH, J.

## JOSEPH, J.

This matter is before us on judicial review of the final order of the Superintendent in a disciplinary proceeding. Petitioner was charged with possession of a knife. He had a hearing before the decision in *Bartholomew v. Reed,* 477 F Supp 223 (DC Or 1979), and a second hearing as a result of that decision. The disciplinary committee found petitioner guilty.

The charge was based on the information furnished by an unidentified informant, who said he was an eyewitness to the secreting of the weapon. Petitioner's theory was that one of six fellow inmates who owed him money might have planted the knife as a means of preventing him from collecting a debt. He requested an investigation pursuant to Temporary Rule VI-(G)(5)(a)[1] by questioning the informant. The presiding officer of the committee said the committee did not know the name of the informant and: "You must by name request and identify who you would wish to have contacted during the course of the investigation." When petitioner pointed out that the officer who wrote up the report would know who the informant was, the presiding officer responded:

"That is correct. In accordance with Judge Burns' Decision, when unidentified informant testimony is presented to the Disciplinary Committee, the identity of the informant or a verbatim statement of the informant or both shall be revealed to the Disciplinary Committee. In this case, this Committee has received the verbatim statement of the informant. We have not received the identity of that informant. \*\*\*

"You can't give me the name or what you would like to have done in investigation, Mr. Downer, and I must have that specific information upon which to

---

[1] "An investigation shall be conducted upon the inmate's request if an investigation will assist in the resolution of the disciplinary proceedings and the information sought is within the ability of the facility to procure."

make a finding that your request would result in a resolution of this particular matter."

The temporary rule alters the approach of former OAR 291-40-115(d)(A)[2] by conditioning granting of an investigation request on two standards, rather than one, and eliminating the use of the word "relevant." The respondent points out that the first change (the condition of "availability") apparently incorporates the rationale underlying *Bishop v. OSP,* 35 Or App 315, 581 P2d 122 (1978) and *Sandlin v. OWCC,* 28 Or App 519, 559 P2d 1308 (1977). The second change (referring to assistance rather than relevancy) probably reflects an intention to avoid some of the strictures arising from the use of the term "relevant" found in *Wilkerson v. OSCI,* 24 Or App 61, 64, 544 P2d 198 (1976) and *Geddes v. OSP,* 26 Or App 303, 552 P2d 568 (1976).

The resolution in our review rests upon whether *Palaia v. OSP,* 41 Or App 119, 597 P2d 832 (1979), survives the rule change. In that case we held that the disciplinary committee erred in refusing petitioner's request for an investigation when he had asked that several inmates be questioned as to what they had heard or seen concerning the assault charged. It was held that under OAR 291-40-115 the questions formulated by the petitioner combined with the petitioner's general request for an investigation were sufficient to require the committee to conduct an investigation. Respondent argues that the new rule places the threshhold burden of alleging some basis for inquiry triggering the operation of the rule upon the petitioner, and that absent such a preliminary offer the hearings officer properly denied the request.

Questioning of the informant might have revealed, for examples, that he did owe petitioner money and did

---

[2]
"(d) An inmate has a right to request an investigation to be conducted by the disciplinary committee or its designee:

"(A) ·An investigation shall be conducted upon the inmate's request if relevant."

have a motive to frame him, or it might have revealed that the informant was put up to giving information to the guard by someone who had such a motive. The investigation would have been relevant and, under the very words of the new rule, could have assisted in the resolution of the disciplinary proceeding. It appears from the record that the committee refused the request because petitioner could not supply it with the name of the informant. Given that the name of the informant was known to the reporting officer, clearly the information sought was within the ability of the facility to procure. No effort has been made in this appeal to establish that an investigation would have constituted a threat to the facility's safety and security. Therefore, under the authority of *Palaia,* we hold that the disciplinary committee erred in denying petitioner's request for an investigation.

Petitioner also requested the committee to have the knife fingerprinted. He theorized that the absence of his own fingerprints and the presence of another's fingerprints would show that the weapon had been planted. The request was denied on the basis that the presiding officer had no authority to demand that the state police analyze the knife. There is no basis in the administrative rules for the committee's ruling. Petitioner had the right to have an investigation pursued. Had the state police been requested to conduct such an investigation and refused, that might well be an entirely different matter.

Reversed and remanded.